# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELTER COVE MARINA, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> M/Y ISABELLA, U.S.C.G. OFFICIAL NO. 1192004, an 81.6-Foot, 1952 Motor Yacht, and All of Her Engines, Tackle, Accessories, Equipment, Furnishings, and Appurtenances, in rem, <br><br> Defendant. | CASE NO. 19cv1106-LAB (WVG) <br><br> **ORDER GRANTING MOTION FOR ISSUANCE OF IN REM WARRANT [Dkt. 3];** <br><br> **ORDER GRANTING MOTION TO APPOINT CUSTODIAN [Dkt. 4]** |

The yacht rock classic "How Long" by Ace begins with a simple question: "How long has this been going on?" Ace, *How Long*, *on* Five-A-Side (Anchor Records 1974). In the case of Shelter Cove Marina and the M/Y Isabella, an 82-foot yacht moored in San Diego Bay with a poor track record of paying her wharfage fees, the answer to that question is approximately two years. Despite its previous orders directing seizure and sale of the Isabella to satisfy Shelter Cove's maritime liens, the Court finds itself confronted yet again with a vessel that is both unwilling to pay its debts and unwilling to leave. So taking another page from the yacht rock hymnal, we'll "go back, Jack, do it again." Steely Dan, *Do It Again*, *on* Can't Buy a Thrill (ABC Records 1972). Shelter Cove's motions for the issuance of an in rem warrant and to appoint Shelter Cove as the vessel's custodian are **GRANTED**. Dkts. 3, 4.

**Background**[1]

Shelter Cove first brought suit against the Isabella in 2017, alleging that the vessel and her owners had breached a maritime contract by failing to pay the marina roughly $37,000 in wharfage fees. *See* Case No. 17-cv-1578-GPC, Dkt. 1. In order to satisfy Shelter Cove's maritime lien, the Court ordered the United States Marshal to seize (and later sell) the vessel. Scott Sumner and Crescent Bay Corp., LLC purchased the Isabella, but by that time the vessel had fallen into disrepair. As an accommodation, Shelter Cove agreed to continue mooring the vessel for a year at a reduced rate if Sumner would work to make her seaworthy again. Unfortunately for Shelter Cove, more than a year passed and Sumner showed no signs of honoring his end of the bargain—today, the Isabella remains covered in the same tarps Shelter Cove originally placed over her to prevent flooding. Adding insult to injury, Shelter Cove alleges that Sumner stopped paying wharfage fees in December 2018. As of May 31, 2019—and despite multiple letter informing the owners of their obligations to pay—Shelter Cove estimates that the Isabella has incurred arrearages of approximately $19,243.16, an amount that increases by $217.50 daily. Shelter Cove brought this suit against the Isabella in rem to collect on the debt.

**Jurisdiction**

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. If a plaintiff demonstrates that it provided necessaries to a vessel by order of the owner of the vessel or a person authorized by the owner, "it may invoke the admiralty jurisdiction of the federal courts to enforce a necessaries lien in rem." *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 919 (9th Cir. 2002). A maritime contract is not needed to invoke the admiralty jurisdiction pursuant to the Maritime Lien Act. *Id.* at 919-22.

---

[1] All facts are taken from Shelter Cove's verified complaint and the declarations attached to Shelter Cove's motions.

**Arrest Warrant**

**1.     The Maritime Lien Act**

The Federal Maritime Lien Act provides that:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner – (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C.§ 31342.  A lien claimant must meet three requirements before a court may grant a maritime lien under Section 31342: namely, (1) that the individual provided necessaries; (2) to a vessel; (3) on the order of the owner or a person authorized by the owner.  *Ventura Packers*, 305 F.3d at 922.  The relevant statute defines "necessaries" as "repairs, supplies, towage, and the use of a dry dock or marine railway."  46 U.S.C. § 31301(4).  This list, however, is not exhaustive.  The term is broadly construed to refer to "anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers*, 305 F.3d at 923.  As the Court recognized in the prior iteration of this case, wharfage services are "necessaries" within the meaning of maritime law.  *See* Case No. 17-cv-1578-GPC, Dkt. 5 at 3 (citing *The Western Wave*, 77 F.2d 695, 698 (5th Cir. 1935) (wharfage fees constitute necessaries); *Humphreys Railways, Inc. v. F/V Nils S*, 603 F. Supp. 95, 98 (E.D. Va. 1984) (same); *Crescent City Harbor Dist. v. M/V Intrepid*, 2008 WL 5211023, *3 (N.D. Cal. 2008) (same)).

**2.     Admiralty Rule C**

An action may be brought in rem to enforce a maritime lien only when the complaint is (1) verified; (2) describes the property that is the subject of the action with "reasonable particularity"; and (3) states that the property is within the district or will be within the district while the action is pending.  Fed. R. Civ. P. Supp. Adm. Rule C.  If a court determines, after reviewing the complaint and supporting papers, that the conditions for an in rem action exist, "the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action."  *Id.*  "The

rule envisions that the [arrest] order will issue upon a prima facie showing that the plaintiff has an action in rem against the defendant in the amount sued for and that the property is within the district. A simple order with conclusory findings is contemplated." *Id.*, Advisory Committee Note (1985 Amendment).

**3. Analysis**

Little has changed since the Court first encountered the Isabella in 2017. The first two requirements for establishing a maritime lien under Section 31342 are plainly met: (1) Shelter Cove has provided "necessaries" to the Isabella (in the form of wharfage) since the vessel was sold in February 2018, and (2) the Isabella, despite her battered status, remains a "vessel." *See* 1 U.S.C. § 3 (defining "vessel" to include any watercraft "used, *or capable of being used*, as a means of transportation on water.") (emphasis added); *see also Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 872 (11th Cir. 2010) (citations omitted) ("In deciding whether a watercraft is a vessel, the focus ... is the craft's capability, not its present use or station. The dispositive question is whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one.").

Only the statute's third requirement—that the necessaries were provided "on the order of the owner or a person authorized by the owner"—gives the Court pause. Shelter Cove alleges that, despite its repeated requests, the Isabella's owner refused to execute a written contract for wharfage. *See* Complaint ¶ 13. Without a written contract, the Isabella's owners could conceivably argue they didn't approve the necessaries rendered. Nonetheless, the Court finds this element is satisfied. First, even if there was no written contract, the parties apparently operated under an oral agreement, as evidenced by the fact that the Isabella's owner paid wharfage fees for the first ten months the vessel was docked. Second, the owners implicitly consented to Shelter Cove providing the necessaries—the slip where the vessel was docked—by virtue of their decision to leave the vessel there. Had they desired to forfeit this, they were perfectly entitled to make the Isabella seaworthy and (after paying the arrearages) take her to another location. Shelter

Cove has demonstrated, at least at this stage of the case, that they were authorized by the owners to provide necessaries to the Isabella.  This finding is bolstered by the Ninth Circuit's decision in *Venura Packers*, which held that a "maritime lien for necessaries created by § 31342 is not predicated on the existence of a maritime contract."  *Ventura Packers*, 305 F.3d at 920.  "In general, maritime liens, including necessaries liens, exist to keep ships moving in commerce, while preventing them from sailing away from the debts they incur."  *Id.* at 919.

The Court likewise finds that Admiralty Rule C's requirements for bringing an in rem action are met.  Shelter Cove's Verified Complaint reasonably describes the vessel—an 81.6-foot, 1952 motor yacht of steel construction which is documented with the United States Coast Guard under Official Number 1192004—and establishes that it will remain in this district during the litigation.  *See* Complaint ¶ 3.  With these requirements satisfied, Shelter Cove has made a prima facie showing that this Court has subject matter jurisdiction and that an in rem action is proper.  Shelter Cove's motion for an arrest order is **GRANTED**.  Dkt. 3.

## Arrest Order

The Court, having reviewed the Verified Complaint of Plaintiff Shelter Cove Marina, Ltd. ("PLAINTIFF") and the Declaration of Philip E. Weiss, an attorney acting on its behalf, and upon application of PLAINTIFF for an Order Authorizing a Warrant of Arrest, finds that the conditions for an action in rem appear to exist, and it is therefore:

**ORDERED** that the immediate issuance of a warrant for the arrest of the Defendant Vessel, M/Y ISABELLA, U.S.C.G. Official No. 1192004, a 81.6-Foot, 1952 Motor Yacht and all of her tackle, accessories, equipment, furnishings (the "DEFENDANT VESSEL") and appurtenances is authorized; and

**IT IS FURTHER ORDERED** that the Clerk of the District Court shall immediately prepare a Warrant for the Arrest of the DEFENDANT VESSEL and shall deliver it to the United States Marshal for the Southern District of California for service; and

| 1 | **IT IS FURTHER ORDERED** that any person claiming an interest in the |
|---|---|
| 2 | DEFENDANT VESSEL shall be entitled upon request to a prompt post-seizure hearing |
| 3 | at which the Plaintiff shall be required to show why the arrest should not be vacated or |
| 4 | other relief granted consistent with the Supplemental Rules for Certain Admiralty and |
| 5 | Maritime Claims; and |
| 6 | **IT IS FURTHER ORDERED** that a copy of this Order be attached to and served |
| 7 | with the said Warrant For Arrest In Action In Rem. |

### Substitution of Custodian Order

Shelter Cove has also moved to appoint itself as the custodian of the Isabella for the duration of this litigation. Dkt. 4. Local Civil Rule E.1(2) provides that:

> On motion of any party, made after notice to the marshal and all parties who have appeared, a judge may order that custody of the vessel be given to the operator of a marina or similar facility, repair yard, or company regularly carrying on the business of ship's agent, if a judge finds that such firm or person can and will safely keep the vessel and has in effect adequate insurance to cover liability for failure to do so. If the vessel must be moved to the place where custody will be maintained, a judge may also require insurance or other security to protect those having an interest in the vessel, as well as those claiming against her, from loss of or damage to the res, or liability of the vessel, incurred during the movement.

As in 2017, the Court is satisfied that Shelter Cove Marina is able to safely harbor the Isabella during these proceedings. According to the declaration of Shaun McMahon, the general manager of Shelter Cove, the marina is one of the best-known and well-established marinas in the San Diego area. Dkt. 4-1 ¶ 2. Access to the vessels moored there is possible only with a gate access key, and marina staff regularly patrol the docks. *Id.* The marina has instructed its staff members to keep close watch of the Isabella, and a "live aboard tenant" in a nearby vessel has likewise agreed to routinely verify the ship's status after hours. *Id.* The Isabella will be secured to its pier using a high strength chain and lock. *Id.*

Further supporting Shelter Cove's application, the marina has several insurance policies protecting it in the event of custodial negligence, including at least four policies in excess of $1,000,000. *Id.* ¶ 7. Shelter Cove declares that it will provide ongoing wharfage and custodial services for the Isabella at the slip where she is located at a cost of $261 per day. *Id.* ¶¶ 5(e)-(f). It will also provide weekly inspections of the vessel to check for watertight integrity, excessive bilge water, and fuel lubricant leaks, at a rate of $50 per inspection. *Id.* ¶ 5(d).

Satisfied that Shelter Cove will act as a capable custodian for the Isabella, the Court **GRANTS** its motion for appointment as custodian of the vessel. Dkt. 4.

### Substitution of Custodian Order

Plaintiff, SHELTER COVE MARINA, LTD., ("PLAINTIFF"), by and through its attorneys, Brodsky, Micklow, Bull & Weiss, LLP, having appeared and made the following recitals:

1. On or about June 13, 2019 the Verified Complaint herein was filed praying that the DEFENDANT VESSEL and her tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, be condemned and sold to pay PLAINTIFF's demands and for other proper relief.

2. It is contemplated the United States Marshal will arrest the DEFENDANT VESSEL forthwith following PLAINTIFF's application therefore and pursuant to Order of this Court. Custody by the United States Marshal requires the services of one or more keepers, and does not include charges for wharfage and the other services usually associated with safekeeping vessels similar to the DEFENDANT VESSEL.

3. The DEFENDANT VESSEL is situated in a slip located at 2240 Shelter Island Drive, Shelter Island, San Diego, California, which premises is leased and operated by PLAINTIFF. It has agreed to assume the responsibility for safekeeping of the said DEFENDANT VESSEL and has consented to act as her Substitute Custodian until further order of this Court. It will provide, as necessary under the circumstances, the following services for the safekeeping of the DEFENDANT VESSEL, at a cost not to exceed the

prevailing rates for substitute custodian services in the Port of San Diego, as described with further particularity in the Declaration of Shaun McMahon, its General Manager:

  a. Assume custody of the vessel from the United States Marshal at the place of her arrest, and keep her in her current slip or other suitable location within PLAINTIFF's marina, at a rate not exceeding the usual and customary rate prevailing in the Port of San Diego for substitute custodian services, until further order of the Court;

  b. As soon as possible after assuming custody of the vessel, photograph and/or video tape the interior and exterior, and prepare a written inventory of equipment and property aboard which is not installed as part of the vessel;

  c. Periodically inspect mooring lines/fenders to assure safe and secure mooring;

  d. Periodically as deemed prudent under the existing circumstances, but no less than weekly, at the rate of $50.00 per inspection, inspect the vessel for watertight integrity, excessive bilge water and fuel lubricant leaks. Where further action beyond those detailed herein is deemed necessary to preserve the vessel, SHELTER COVE shall advise counsel, so counsel can seek an appropriate order from the Court;

  e. Provide wharfage services for the DEFENDANT VESSEL during the period of her arrest at the marina's standard transient rate of $2.50 per foot of vessel length per day, which for the 87-foot DEFENDANT VESSEL (overall length) is $217.50 per day (i.e., 87 feet overall length x $2.50 per foot per day = $217.50 per day);

  f. Provide custodial services for the benefit of the DEFENDANT VESSEL during the period of her arrest at the rate of fifty cents per foot of vessel length per day, which for the 87-foot DEFENDANT VESSEL is $43.50 per day (i.e., 87 feet overall length x $0.50 per foot per day = $43.50 per day);

  g. Provide, at rates not exceeding the usual and customary rates prevailing in the Port of San Diego additional services, such as cleaning, minor maintenance, inspection of bottom by a diver for the purpose of cleaning and reporting

1  findings regarding underwater hull, metal and zinc conditions, as such services are deemed prudent;

h. SHELTER COVE will operate only machinery described in a proper Court order; and

i. Provide other such services as may be required from time-to-time, by further order of the Court.

4. PLAINTIFF, in consideration of the Marshal's consent to the substitution of custodian, agrees to release the United States and the Marshal from any and all liability and responsibility arising out of the case and custody of the DEFENDANT VESSEL, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, from the time the Marshal transfers possession of said vessel over to said substitute custodian, and further agrees to hold harmless and indemnify the United States and the Marshal from any and all claims whatsoever arising out of the substitute custodian's possession and safekeeping.

The Court finds that this declaration satisfies the requirements of Local Rule E.1. As such,

**IT IS ORDERED** that the United States Marshal for the Southern District of California be, and is hereby, authorized and directed upon seizure of the DEFENDANT VESSEL, her tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, pursuant to the Warrant for Arrest to surrender the possession thereof to the Substitute Custodian named herein, and that upon such surrender the Marshal shall be discharged from his duties and responsibilities for the safekeeping of said vessel and held harmless from and against any and all claims whatever arising out of said substituted possession and safekeeping;

**IT IS FURTHER ORDERED** that SHELTER COVE MARINA, LTD. be, and is hereby appointed, the Substitute Custodian of said vessel, to retain her in its custody for possession and safekeeping, with the authority to move the DEFENDANT VESSEL to any suitable and safe place within its marina, for the aforementioned compensation and

1 | in accordance with the Declaration of Shaun McMahon and the recitals herein contained
2 | until further order of this Court; and
3 |     **IT IS FURTHER ORDERED** that PLAINTIFF's attorney will serve by mail a copy
4 | of this Order to the last known address of DEFENDANT VESSEL's owner(s) or apparent
5 | owner(s), except that if any named Defendant is known by Plaintiff or its counsel to be
6 | represented in connection with Plaintiff's claims in this action, Plaintiff shall serve this
7 | Order on such counsel, rather than on his or her client.

## Conclusion

This port on a western bay may not serve a hundred ships a day, *cf.* Looking Glass, *Brandy (You're a Fine Girl)*, *on* Looking Glass (Epic Records 1972), but its marinas nonetheless deserve to be reimbursed when they render necessaries. For the reasons above, Shelter Cove's motion for the issuance of an arrest warrant to seize the Isabella is **GRANTED**. Dkt. 3. Its motion for appointment as the vessel's custodian during the pendency of this litigation is likewise **GRANTED**. Dkt. 4.

    **IT IS SO ORDERED**.

Dated: June 18, 2019

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge